IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HANS IKAMBA LASWAY, et al.                :

                                          :

    v.                                    :   Civil Action No. DKC 22-2225

                                          :

KATHY A. BARAN, et al.                    :

                                          :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this immigrant visa denial case brought pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ("APA") is the motion to dismiss or for summary judgment filed by Defendants.  (ECF No. 20).  Also pending is a motion to seal the administrative record.  (ECF No. 25).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, both motions will be granted.

I.  **Background**

   A. **The Immigration and Nationality Act**

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, a citizen may petition for immediate relative status for his or her non-citizen spouse so that the non-citizen spouse may immigrate to the United States by filing an I-130 petition with United States Citizenship and Immigration Services ("USCIS").  *See* 8 U.S.C. §§ 1151, 1154; 8 C.F.R. § 204.1(a)(1).

The citizen spouse must submit evidence along with the petition to prove, among other things, "the claimed relationship" of the citizen spouse to the non-citizen spouse.  8 C.F.R. § 204.1(f). The citizen spouse bears the burden of establishing his or her spouse as eligible for immediate relative status.  *Roland v. U.S. Citizenship & Immigr. Servs.*, 850 F.3d 625, 629 (4th Cir. 2017) (citing 8 U.S.C. § 1361).  The Attorney General will conduct "an investigation of the facts in each case" to determine whether the "facts stated in the petition are true" and that the non-citizen spouse is eligible for immediate relative status.  8 U.S.C. § 1154(b).

The INA provides that

> no [I-130] petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).  Accordingly, USCIS "will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy."  8 C.F.R. 204.2(a)(l)(ii).

### B. Factual Background[1]

Plaintiff Ikumbo Nyange was born in and is a citizen of Tanzania.  (ECF Nos. 22-4, at 5; 23-3, at 23).  She obtained an F1 visa to complete her bachelor's degree at Saint Mary's University of Minnesota, graduating in June 2009.[2]  (ECF Nos. 22-3, at 4; 24-3, at 32).  She obtained another F1 visa to pursue a master's degree at the same university, and she received that degree in June 2011.  (ECF Nos. 23-2, at 17; 24-3, at 33).  After completing her master's program, she received authorization to remain in the United States for temporary employment through the Optional Practical Training program.[3]  (ECF No. 23-2, at 18-20).

According to Ms. Nyange's sworn statement before a USCIS Officer on August 23, 2012, she met Ronald Antoin McMillon, a United States citizen, at a birthday party in June 2011.  (ECF No.

---

[1] The APA confines judicial review of agency decisions to the administrative record of proceedings before the pertinent agency.  *See* 5 U.S.C. § 706; *see also Camp v. Pitts,* 411 U.S. 138, 142 (1973).  The following facts are derived from the administrative record, which appears at ECF Nos. 22-24.

[2] *See* 8 U.S.C § 1101 (an "F1 student" is an "alien having residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study").

[3] *See* 8 C.F.R. § 214.2(f)(10)(ii)(A) (providing that an F1 student "may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study.").

23-3, at 25).  Ms. Nyange stated that they started dating a few months after that, they started living together on February 2, 2012, and they married on February 24, 2012.  (*Id.* at 25-26).

On March 28, 2012, Mr. McMillon filed an I-130 petition on behalf of Ms. Nyange.  (*Id.* at 15).  In support of the petition, Mr. McMillon submitted a copy of his birth certificate, a copy of his and Ms. Nyange's marriage certificate, banking information, insurance information, apartment lease and utility information, and eight photographs of Ms. Nyange and him taken at the same time and printed on March 17, 2012.  (*Id.* at 16-17, 47-90).  Mr. McMillon and Ms. Nyange were interviewed by USCIS initially on August 7, 2012.  (*Id.* at 21).  They were then interviewed separately on August 23, 2012.  (*Id.* at 23-45).

On July 23, 2013, USCIS issued a Notice of Intent to Deny ("NOID"), advising Mr. McMillon that he had "failed to meet [his] burden of establishing that the marriage was bona fide and not entered into primarily to secure an immigration benefit."  (*Id.* at 15-20).  The NOID explained that during the separate interviews, Mr. McMillon and Ms. Nyange "did not know some of the things couples commonly know about each other."  (*Id.* at 17).  It listed the following examples from Mr. McMillon's interview:

> You did not know her last name.  You said it
> starts with an N-Y.  You did not know her date
> of birth.  You said it was January 24, 1982.
> It is January 27, 1982.  You did not know the
> name of the country she was from.  She is from

> Tanzania. You did not know she has a Master's
> degree. You said she has only a high school
> diploma. You did not know why she came to the
> United States. She came for school and has
> attended school since 2003. You thought the
> beneficiary was a sales or stocking clerk at
> her job in Minnesota. She is an accountant at
> the corporate office. You didn't know her
> email address or her cell phone number. You
> said your wedding date was February 27, 2012.
> It's February 24, 2012. You did not know the
> name of the auto insurance company, or who is
> insured on the life insurance policy, both
> documents you submitted in support of your
> petition.

(*Id.*). The NOID also cited discrepancies in the couple's answers

to several questions, including when they started living together,

what their wedding rings looked like, the number of siblings Ms.

Nyange had, the number of televisions in their home, where they

did their laundry, where they kept the vacuum cleaner and when Ms.

Nyange last used it, how many tattoos Mr. McMillon had, when they

consummated their marriage, and where they each were the previous

weekend. (*Id.* at 17-18). The NOID added that both Mr. McMillon

and Ms. Nyange testified that they lived together in Missouri but

also that Ms. Nyange only visited Mr. McMillon in Missouri from

Minnesota when she had time off work. (*Id.* at 18, 24, 30, 34,

35). Mr. McMillon said that Ms. Nyange made the trip every few

months, but Ms. Nyange said that she tried to make the trip every

weekend. (*Id.* at 30, 35).

    The NOID described that USCIS contacted Mr. McMillon's

previous probation officer on September 13, 2012, and the probation

officer reported that she did not know that Mr. McMillon was married, although she had seen Mr. McMillon in person three days before the wedding. (*Id.* at 18). On September 19, 2012, USCIS contacted the property manager of the apartment in which Mr. McMillon and Ms. Nyange purportedly lived together, and the property manager reported that Mr. McMillon had moved out "months" earlier. (*Id.*). He also reported that the property management company's records showed that they last billed Mr. McMillon on July 21, 2012, although Mr. McMillon and Ms. Nyange testified to living there during their August 23, 2012, interviews. (*Id.* at 18, 24, 34). The property manager noted that the address and telephone number listed next to his name on the lease provided to USCIS by Mr. McMillon were not his, and he did not know to whom they belonged. (*Id.* at 18). The NOID went on to describe that on July 19, 2013, USCIS contacted Mr. McMillon's new probation officer, who reported that Mr. McMillon was living with another woman—the mother of his two children—in Villa Ridge, Missouri, and the couple was expecting a third child. (*Id.* at 19).

The NOID advised Mr. McMillon that he could respond with rebuttal evidence or explanation within thirty-three days. (*Id.* at 20). Mr. McMillon did not respond. (*Id.* at 14). On October 7, 2013, USCIS issued a letter to Mr. McMillon advising him that his petition was denied. (*Id.* at 8). The denial letter explained that USCIS had concluded that the marriage "was a sham, entered

6

into for immigration benefits only rather than to establish a life together for love and affection," based on the reasons described in the July 23, 2013, NOID.  (*Id.* at 14).

According to the May 3, 2019, affidavit Ms. Nyange submitted in support of the I-130 petition that is the subject of this lawsuit, she and Mr. McMillon began having problems in their relationship in May 2012.  (ECF No. 24-3, at 26).  The last time they saw each other was in January 2013.  (*Id.* at 28).  Ms. Nyange returned to Tanzania in August 2013.  (*Id.* at 23).  Mr. McMillon and Ms. Nyange were officially divorced in 2017.  (ECF No. 24-3, at 45).

Ms. Nyange married Plaintiff Hans Lasway, a United States citizen, in Tanzania on July 7, 2018.  (ECF No. 24-2, at 71).  Mr. Lasway filed an I-130 petition on behalf of Ms. Nyange on June 25, 2019.  (ECF No. 24-2 at 43, 66-83).  In support of the petition, Mr. Lasway submitted an affidavit from himself and a private investigator as well as documentation that Mr. Lasway's marriage to Ms. Nyange was genuine.  (*Id.* at 45).

USCIS issued Mr. Lasway an NOID on January 29, 2020.  (*Id.* at 43-46).  The NOID stated that Ms. Nyange was "ineligible for the benefit sought" because she "was involved in a prior marriage to Ronald Antoin McMillon for the sole purpose of obtaining an immigration benefit."  (*Id.* at 43).  The NOID explained that the affidavits Mr. Lasway submitted with his petition were not

supported by corroborating evidence. (*Id.* at 45). It added that "the circumstances of events during the beneficiary's marriage to Ronald Antoin McMillon constitute substantial and probative evidence that the purpose of the marriage was to evade the immigration laws," including the lack of documentary evidence of a shared life, the evidence that Mr. McMillon and Ms. Nyange "knowingly and deliberately attempted to mislead or deceive immigration official(s) regarding their cohabitation," and the inconsistencies in the responses the couple provided during their interviews. (*Id.*). The NOID also noted that it was "problematic" "that none of the beneficiary's family members attended the wedding, nor had ever met Ronald Antoin McMillon," including Ms. Nyange's mother, who entered the United States shortly after the wedding. (*Id.* at 46; ECF No. 23-3, at 29; 24-2, at 12). The NOID advised Mr. Lasway that he had thirty-three days to submit rebuttal evidence or arguments in support of the petition. (ECF No. 24-2, at 46).

Mr. Lasway, through counsel, submitted a response on February 28, 2020. (ECF No. 24-1, at 1). The response included an affidavit from Mr. McMillon explaining the reasons he gave inconsistent testimony; an affidavit from Mr. McMillon explaining that his marriage to Ms. Nyange was genuine; a copy of the August 23, 2012, interviews of Mr. McMillon and Ms. Nyange annotated to show the matching answers they gave; an affidavit from Mr. Lasway; an

affidavit from Ms. Nyange explaining the inconsistencies in the testimonies; a statement from Ms. Nyange's mother explaining why she had never met Mr. McMillon; an affidavit from a second private investigator; copies of emails between Mr. Lasway, his attorney, and the first private investigator; flight information from Ms. Nyange's flight to Missouri for the August, 23, 2012, interview; and Ms. Nyange's medical records. (*Id.* at 1-2, 7-38; ECF No. 24-2, at 1-38).

USCIS denied Mr. Lasway's petition on September 22, 2020. (ECF No. 22-3, at 22).  The denial letter stated that USCIS had "conducted a new analysis of the evidentiary record and concluded that the prior finding of fraud should be sustained."  (*Id.* at 23).  It explained that the affidavits and statements attesting to the legitimacy of the marriage between Mr. McMillon and Ms. Nyange, without more, were insufficient "to overcome the prior findings of marriage fraud without the support of objective documentary evidence."  (*Id.*).  The letter responded to Mr. Lasway's contention that USCIS ignored the consistent answers that Mr. McMillon and Ms. Nyange gave in their interviews by explaining that "[a]ll questions during the couples interview were reviewed in detail," and "it was determined that the significance of the incorrect answers and the facts provided in the case provided ample support to conclude" that the marriage was fraudulent. (*Id.*).  The letter added that there was "no credible evidence of record to show that

the marriage was entered into with the intent of living a future life together." (*Id.*).

Mr. Lasway appealed the denial to the Board of Immigration Appeals ("BIA"). (ECF No. 23-4, at 12). In his brief in support of the appeal, he argued that there was "not substantial and probative evidence of marriage fraud" and that USCIS "overlook[ed] the substantial and probative evidence in this case including the statements by Mr. McMillon himself indicating they married for love." (*Id.* at 21, 24). He added that the lack of documentary evidence of Mr. McMillon's and Ms. Nyange's shared life was "due to their socio-economic status"—they "had no assets"—and to the fact that they "had no legal representation in part due to their lack of resources and knowledge." (*Id.* at 21-22). As for the inconsistencies in the interviews, he argued that those were explained by the fact that Mr. McMillon and Ms. Nyange had only been married for seven months at the time of their interview, by the long-distance nature of their relationship, and by the other explanations contained in the declarations submitted. (*Id.* at 22).

The BIA affirmed the denial of the petition and dismissed the appeal on August 1, 2022. (ECF No. 22-2, at 2-4). The BIA determined that "[t]he record supports a finding by substantial and probative evidence that the beneficiary's prior marriage was

entered into for the purpose of evading the immigration laws."

(*Id.* at 3).  It explained that USCIS

> properly relied on evidence of marriage fraud
> in the record, including the beneficiary and
> her former spouse's separate residence in
> different states, the lack of objective
> corroborating evidence that they ever
> cohabited, the submission of a fraudulent
> lease agreement purporting to show their
> cohabitation, the lack of evidence submitted
> to establish the bona fide nature of their
> marriage, the fact that the beneficiary did
> not introduce her former spouse to her mother
> after her mother entered the United States,
> and her former spouse's abandonment of the
> visa petition after being confronted with
> inconsistencies in the record. [USCIS] also
> properly relied on significant
> inconsistencies in the testimony provided by
> the beneficiary and her former spouse,
> including the former spouse's inability to
> remember the date of their marriage,
> inconsistencies as to when the beneficiary and
> her former spouse last spent time together,
> and inconsistencies as to how the beneficiary
> travelled to Missouri for the visa petition
> interview.

(*Id.*).  The BIA added that the affidavits alone were not sufficient to overcome the evidence of marriage fraud without objective documentary evidence to corroborate the assertions in the affidavits, and Mr. Lasway's other arguments were unpersuasive. (*Id.*).

Mr. Lasway and Ms. Nyange (together, "Plaintiffs") filed the instant lawsuit on September 6, 2022.  (ECF No. 1).  They named as Defendants Kathy A. Baran, USCIS California Service Center Director; Ur M. Jaddou, Director of USCIS; Alejandro Mayorkas,

Secretary of the United States Department of Homeland Security; and Merrick B. Garland, United States Attorney General (together, "Defendants"). Their complaint contains three claims: (1) a claim that Defendants acted arbitrarily, capriciously, and contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"); (2) a claim that Defendants violated the Due Process Clause of the Fifth Amendment to the United States Constitution by discriminating against Ms. Nyange based on her socioeconomic status;[4] and (3) a claim for attorney's fees and costs.

Defendants filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. (ECF No. 20). Plaintiffs responded in opposition to the motion, (ECF No. 26),[5] and Defendants replied. (ECF No. 27).

## II.  Standard of Review

### A. Summary Judgment and the APA

Generally, "claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing

---

[4] Count II alleges only that Plaintiffs' "equal protection rights have . . . been violated by the USCIS," but because their claim is against federal actors, the claim is reasonably interpreted as alleging a violation of the Due Process clause of the Fifth Amendment, which applies equal protection principles to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

[5] Plaintiffs' opposition is not signed by local counsel, as required by Local Rule 201.1.b.

administrative record," and "are properly decided on summary judgment." *Audubon Naturalist Soc'y of The Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F.Supp.2d 642, 660 (D.Md. 2007); *see also* 10B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2733 n.5 (4th ed. April 2023 Update) ("Summary judgment is a particularly appropriate vehicle for resolving appeals from administrative agency determinations since the agency itself serves as the fact finder and an appeal generally is limited to questions of law."). The standard set forth in Fed.R.Civ.P. 56, however, does not govern the summary judgment analysis in these cases "because of the limited role of a court in reviewing the administrative record." *Nat'l Fed'n of the Blind v. U.S. Abilityone Comm'n*, 421 F.Supp.3d 102, 114 (D.Md. 2019).

The APA instructs federal courts to set aside agency actions that are, as relevant here, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating APA claims, the reviewing court views "[t]he entire case [as] a question of law," *City of Columbus v. Cochran*, 523 F.Supp.3d 731, 743 (D.Md. 2021) (internal quotation marks omitted) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)), and it "assess[es] whether, based on the administrative record, the agency action was unlawful." *Ren v. U.S. Citizenship & Immigr. Servs.*, 60 F.4th 89, 93 (4th Cir. 2023). Courts "normally will not set aside agency

13

action as arbitrary and capricious unless the agency relies on inappropriate factors, ignores a critical issue, or reaches a decision that is flatly contradicted by the evidence or is otherwise implausible." *Id.* This is a "highly deferential" standard, and although the court's "inquiry into the facts is to be searching and careful," "[t]he court is not empowered to substitute its judgment for that of the agency." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (internal quotation marks omitted). Count I, the APA claim, will be addressed under this standard.

### B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must include more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, the complaint must allege "enough facts to state a claim to relief that is plausible on its

14

face." *Twombly*, 550 U.S. at 570.  In evaluating a 12(b)(6) motion, the court must consider all well-pleaded allegations in the complaint as true.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994).  The court is not, however, required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Counts II and III will be analyzed under this standard.

## III. Analysis

### A. Count I

In Count I of their complaint, Plaintiffs allege that "Defendants acted arbitrarily, capriciously, and contrary to law in violation of the APA by denying Plaintiffs' I-130[] Petition" because there was "not substantial and probative evidence of marriage fraud to prohibit approval of Mr. Lasway's I-130 petition."  (ECF No. 1, at 14-16).

The question before the court is not whether there was substantial and probative evidence of marriage fraud in the record but rather whether USCIS acted "arbitrarily, capriciously, or not in accordance with law" when it concluded that there was substantial and probative evidence of marriage fraud in the record. *See* 5 U.S.C. § 706(2)(A); *see also Owusu-Boakye v. Barr*, 376 F.Supp.3d 663, 676 (E.D.Va. 2019), *aff'd*, 836 F.App'x 131 (4th Cir. 2020).  Thus, the question is whether USCIS relied on any

inappropriate factors, ignored critical issues, or reached an implausible or unsupported conclusion.

Plaintiffs argue that Defendants inappropriately relied on the evidence gathered during the investigation of the I-130 petition filed by Mr. McMillon and failed to conduct a new investigation, interview witnesses, or allow Plaintiffs the opportunity to cross-examine witnesses. (ECF No. 26-1, at 19). Plaintiffs also take issue with Defendants' reliance on the statements made by the property manager about when Mr. McMillon moved out and about the potential fraudulent nature of the lease. (*Id.* at 21-22). They argue that "it is impossible to verify the validity" of those statements because the property manager no longer owns the apartment building, and the property management company has closed. (*Id.*).

Plaintiffs do not, however, cite any authority prohibiting USCIS from considering evidence gathered during the investigation of a beneficiary's previous I-130 petition when determining whether the beneficiary previously entered into a marriage for the purpose of evading the immigration laws. The regulations governing these investigations state that "substantial and probative evidence" of the attempted fraudulent marriage "must be contained in the alien's file," but they do not require that evidence be gathered anew for each subsequent petition filed on behalf of the alien-beneficiary.  8 C.F.R. § 204.2.  Indeed, courts have

16

explicitly held that "USCIS may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the beneficiary." *Owusu-Boakye*, 376 F.Supp.3d at 675 (internal quotation marks omitted) (alteration in original) (quoting *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990)); *see also Misseme v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1492-SAG, 2023 WL 200220, at *3 (D.Md. Jan. 17, 2023) ("USCIS may rely on any relevant evidence in assessing the validity of a marriage.").

Nor do the regulations require the agency to provide for the cross-examination of witnesses—instead, they simply require the agency to disclose to the petitioner "derogatory information" that might be used to deny the petition, *see* 8 C.F.R. § 103.2(b)(16)(i), which the agency did when it issued the Notice of Intent to Deny. *See Owusu-Boakye*, 836 F.App'x at 136.[6]

Plaintiffs also argue that Defendants inappropriately relied on the lack of financial documents submitted in support of Mr.

---

[6] Seeking to avoid this conclusion, Plaintiffs cite *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013), for the proposition that allowing a petitioner "the opportunity to cross-exam[ine] witnesses [is] required under the law in some circuits." (ECF No. 26-1, at 19). Aside from the fact that Plaintiffs cite no case law that is binding in this jurisdiction, their citation to *Ching* does not help them because the court there held that "there is no statutory right of cross-examination in I-130 visa adjudications." *Id.* at 1154. While the court held that cross-examination *is* required by the Due Process Clause of the Fifth Amendment, *id.* at 1155, Plaintiffs have not challenged their lack of an opportunity for cross-examination on that basis.

McMillon's application because Ms. Nyange and Mr. McMillon "were of a very low socioeconomic class." (ECF No. 26-1, at 19). Plaintiffs do not cite aspects of the record that suggest Defendants relied on the lack of financial documents submitted in making their decision. Indeed, the record does not reflect that USCIS directly relied on the lack of financial documents submitted, or if it did, that it placed any serious emphasis on that factor. In the January 29, 2020, NOID, the agency wrote that the lack of "documentary evidence of a joint life together indicated that . . . the couple never intended to establish a life together as husband and wife at the time they were married." (ECF No. 24-2, at 45). Documentary evidence of a shared life can include many things other than financial documents, such as documentation of joint living arrangements and time spent together; the record reflects that the agency holistically considered the evidence, or lack thereof, of a shared life. Indeed, the agency focused much of its analysis on the evidence that Ms. Nyange and Mr. McMillon never lived together and spent time together infrequently, which is strong evidence of a fraudulent marriage. *See Matter of Phillis*, 15 I. & N. Dec. 385, 387 (B.I.A. 1975) ("Where the parties have never lived together, the amount of evidence required to establish that the

marriage was not entered into for the fraudulent purpose of evading the immigration laws may be considerable.").[7]

Next, Plaintiffs argue that USCIS "fail[ed] to conduct an independent review of Mr. Lasway's I-130 petition[,] instead copy[ing] and pasting the evidence and findings of the initial petition." (ECF No. 26-1, at 19). The record does not reflect this contention. In the September 22, 2020, denial letter, USCIS wrote that it "conducted a new analysis of the evidentiary record and concluded that the prior finding of fraud should be sustained." (ECF No. 22-3, at 23). That letter also reflects that USCIS reviewed and considered the supplemental materials submitted by Mr. Lasway in response to the January 29, 2020, NOID. There is no reason to doubt that USCIS conducted an independent analysis of the record before denying Mr. Lasway's petition.

Finally, Plaintiffs argue that USCIS placed too little weight on the notarized affidavits by Mr. McMillon submitted in response to the January 29, 2020, NOID. (ECF No. 26-1, at 19-20). Defendants did not ignore the affidavits but rather found them "not sufficient to overcome the prior findings of marriage fraud

---

[7] Plaintiffs argue that "[t]here is no absolute requirement that a couple reside together for a marriage to be considered *bona fide*" and that the relevant inquiry is "the intent of the parties at the time the marriage is entered into." (ECF No. 26-1, at 20). This may be true, but Plaintiffs cannot seriously dispute that whether a couple lives together after marrying is relevant in ascertaining whether the parties intended to share a life together at the time of their marriage.

without the support of objective documentary evidence." (ECF No. 22-3, at 23). Thus, Plaintiffs appear to be asking the court to "substitute its judgment for that of the agency" in making credibility determinations and weighing the evidence. The court is not empowered to do so. *See Ohio Valley Env't Coal.*, 556 F.3d at 192. Defendants' decision not to place probative weight on the affidavits by Mr. McMillon was not arbitrary or capricious.

Ultimately, Defendants' decision to deny Plaintiffs' petition is not contradicted by the evidence or implausible. To the contrary, it is amply supported by the record, including interview responses by Mr. McMillon and Ms. Nyange that suggest that they did not know each other well, that they never lived together, and that they were not a significant part of each other's life. Because the record does not show that USCIS relied on factors Congress intended it not to, ignored critical issues, or rendered an implausible decision, the agency's decision to deny Mr. Lasway's I-130 Petition was not arbitrary, capricious, or otherwise not in accordance with the law. Therefore, Defendants' motion for summary judgment will be granted as to Plaintiffs' APA claim.

### B. Counts II and III

Count II of the complaint alleges that Defendants violated Plaintiffs' equal protection rights. Plaintiffs allege the following:

> USCIS by waiting some seven years to re-
> adjudicate the I-130 petition of Ms. Nyange's
> first spouse is unequal treatment and its
> purpose was to create a pretextual reason to
> deny an otherwise *bona fide* I-130 petition.
> By going back in tim[e] more than seven years
> from when the I-130 petition was filed by Mr.
> McMil[l]on and to re-adjudicate that petition
> after was for the purpose of minimizing
> Plaintiffs ability to support the instant
> uncontested *bona fide* I-130 petition. . . .
> Plaintiffs aver on information and belief that
> this delay is primarily directed at her
> socioeconomic status at that time and the CIS
> Service Center, without cause, has adopted the
> position that solely documentary financial
> documents can overcome a finding of [marriage
> fraud] regardless of one's ability to garner
> financial documents due to low income.

(ECF No. 1, at 16-17).

Defendants move to dismiss this claim on two bases. First, they argue that Plaintiffs did not raise this claim before the BIA and, therefore, failed to exhaust their administrative remedies as to the claim. (ECF No. 20-1, at 17). Second, they argue that Plaintiffs fail to state a plausible equal protection claim. (*Id.*).

Because failure to exhaust is an affirmative defense, a motion to dismiss generally cannot be granted on that basis, except in rare cases where it is apparent from the face of the complaint that the plaintiff failed to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The complaint itself does not reveal whether Plaintiffs raised an equal

protection claim before the BIA.   Thus, the claim cannot be dismissed for failure to exhaust.

Count II will be dismissed, however, for failure to state a claim upon which relief can be granted.   To succeed on an equal protection claim, either under the Due Process clause of the Fifth Amendment or under the Equal Protection clause of the Fourteenth Amendment, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").   If the plaintiff makes this showing, the court will proceed "to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654.[8]

---

[8] In their response in opposition to Defendants' motion, Plaintiffs argue that the standard the court should apply to Count II is "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the [government] were constitutionally sufficient." (ECF No. 26-1, at 13).   This standard applies to due process claims, but Count II is expressly an "equal protection" claim. Parties may not amend their complaints through briefing filed in response to a motion to dismiss. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Plaintiffs have not alleged that they were treated differently from others who were similarly situated. The action that they claim violated their rights was USCIS's reliance on Mr. McMillon's I-130 petition, which was filed several years before Mr. Lasway filed his petition. They have not alleged that USCIS does not review prior petitions filed on behalf of other beneficiaries of higher socioeconomic statuses in evaluating their I-130 petitions—in fact, USCIS is required by law to deny any I-130 petition filed on behalf of a beneficiary who has previously entered into a marriage for the purpose of evading immigration laws.[9] 8 U.S.C. § 1154(c). It is also difficult to imagine how reliance on prior I-130 petitions could be evidence of intent to discriminate on the basis of socioeconomic status.[10]

Plaintiffs add that Defendants have "adopted the position that solely documentary financial documents can overcome a finding of [marriage fraud] regardless of one's ability to garner financial documents due to low income." (ECF No. 1, at 16-17). Assuming it

---

[9] Plaintiffs argue in their response in opposition to Defendants' motion that Defendants' "re-adjudication" of the prior I-130 petition violated "collateral estoppel and/or laches." Regardless of the merits of this contention, it is irrelevant to Plaintiffs' equal protection claim.

[10] Plaintiffs suggest that Defendants are responsible for the "delay" of seven years in "re-adjudicat[ing]" Mr. McMillon's I-130 petition for the purpose of evaluating Mr. Lasway's I-130 petition. (ECF No. 26-1, at 17). The gap in time between the two petitions, however, was plainly caused solely by the timing of Plaintiffs' submission of the second petition.

is true that it is Defendants' policy to allow financial documents submitted with an I-130 petition to overcome other evidence of marriage fraud, Plaintiffs have not plausibly alleged that this policy was adopted for the purpose of discriminating against people with fewer economic resources, other than a mere conclusory statement.

Even if Plaintiffs were able to make a successful initial showing of an equal protection claim, they have not made a sufficient showing that the policy would not survive the requisite level of scrutiny.  Because the Supreme Court "has never heretofore held that wealth discrimination alone provides an adequate basis for invoking strict scrutiny," *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973), Plaintiffs' claim would be analyzed under rational basis review.  Under rational basis review, a law is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [government] interest." *Giarratano v. Johnson*, 521 F.3d 298, 302-03 (4th Cir. 2008).  Thus, the question would be whether "any state of facts reasonably may be conceived to justify" Defendants' policy.  *See McGowan v. State of Md.*, 366 U.S. 420, 426 (1961).  To survive a Rule 12(b)(6) motion to dismiss an equal protection claim, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Giarratano*, 521 F.3d at 304 (quoting *Wroblewski*

*v. City of Washburn,* 965 F.2d 452, 460 (7th Cir. 1992)).   Mere conclusory statements are insufficient, as with any claim evaluated under the *Twombly* pleading standard.   *See id.* (citing *Twombly*, 550 U.S. 544).

Plaintiffs have only alleged that Defendants' policy was adopted "without cause."   (ECF No. 1, at 17).   This conclusory statement is insufficient to overcome the presumption that Defendants' policy of relying on financial documentation and prior I-130 petitions filed on behalf of a beneficiary in evaluating I-130 petitions is rational.   Thus, Plaintiffs have failed to state a plausible equal protection claim.

Count III requests attorney's fees and costs in the event that Plaintiffs prevail.   This is not properly brought as a separate claim.   In any event, because judgment will be entered against Plaintiffs on Count I, and Count II will be dismissed, Plaintiffs have no claim for attorney's fees.   Count III will also be dismissed.

## IV. Motion to Seal

Defendants move, with the consent of Plaintiffs, to seal the administrative record.   (ECF No. 25).   Local Rule 105.11 provides that "[a]ny motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why

alternatives to sealing would not provide sufficient protection." Defendants argue that sealing is necessary because the administrative record contains "social security numbers, birth dates, addresses, phone numbers, and financial information of Plaintiffs and non-parties to this litigation, which are set forth in birth certificates, tax returns, passports, the I-130 petitions at issue, various USCIS Forms, and numerous other documents." (*Id.* at 2).  They add that redaction would be inappropriate because the references to sensitive personal information are "too numerous." (*Id.* at 3).

There are certainly compelling reasons to seal personal identifying information from public access, and given the nature of this case, there is personal identifying information throughout the administrative record.  Thus, redacting this information would be burdensome and would leave little of the record unredacted. The court must balance the public's interest in access to the court record with the ethical responsibility to protect sensitive information in the record from public dissemination, reflected in Fed.R.Civ.P. 5.2.  Because the parties' filings and this memorandum opinion quote heavily from the administrative record, the public has access to most, if not all, relevant portions of the record. Thus, sealing the administrative record is appropriate.  The motion to seal will be granted.

**V.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss, or in the alternative for summary judgment, will be granted.  Judgment will be entered for Defendants and against Plaintiffs on Count I, and Counts II and III will be dismissed.  A separate order will follow.

_____/S/_____

DEBORAH K. CHASANOW
United States District Judge
